FILED
CLERK, U.S. DISTRICT COURT
10/27/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: DTA DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

**UNDER SEAL**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRETT A. BARBER,<br><br>Defendant. | No. 8:21-cr-00196-ODW<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1957: Laundering Monetary Instruments; 18 U.S.C. §§ 981 and 982, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1343, 2(a)]

A. INTRODUCTORY ALLEGATIONS

1. At times relevant to this Indictment:

a. Defendant BRETT A. BARBER and Louis Zimmerle, owned and operated BNZ Capital One, LLC ("BNZ Capital").

b. BNZ Capital had its principal place of business in Newport Beach, California.

B. THE SCHEME TO DEFRAUD

2. Beginning no later than in or around May 2019, and continuing to at least October 2021, in Orange County, within the Central District of California, defendant BARBER, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud individual investors as to material matters, and to obtain money and property from individual investors, by means of material false and fraudulent pretenses, representations, and promises, and through the concealment of material facts.

3. The fraudulent scheme operated, in substance, in the following manner:

a. Defendant BARBER, Zimmerle, and others known and unknown to the Grand Jury (the "Marketers") would solicit individual investors to invest with BNZ Capital. Investors were promised guaranteed returns of between 8% and 10% per year. To make the payments promised to earlier investors, defendant BARBER, Zimmerle, and the Marketers would solicit new investors. Many of the investors solicited had a preexisting relationship with defendant BARBER, Zimmerle, or the Marketers through prior investments or insurance contracts that defendant BARBER, Zimmerle, or the Marketers had sold to the investors.

b. In soliciting investors to BNZ Capital, defendant BARBER, Zimmerle, and the Marketers would falsely represent that BNZ Capital was in the business of buying and developing real estate projects and flipping real estate, that is, purchasing real estate for below market value and selling it for a higher value. Defendant BARBER, Zimmerle, and the Marketers falsely represented to investors that they would receive a guaranteed rate of return on their

investments between 8% and 10%, which would be paid out monthly, quarterly, or yearly, as well as potential bonuses based on the success of the real estate development projects and sales. Defendant BARBER further represented that the investment was "safe" and "FDIC insured." Defendant BARBER also failed to disclose to investors that he had previously been barred from acting as or associating with a broker-dealer by Financial Industry Regulatory Authority.

c. In truth, while BNZ Capital purchased some real estate, it did not actually take any substantial steps toward development of parcels, nor did BNZ flip real estate for a profit. Rather, BNZ primarily used investor funds to (1) pay defendant BARBER, Zimmerle, the Marketers, and other insiders, (2) purchase the homes in which defendant BARBER and Zimmerle resided, and (3) repay earlier investors with new investor money. Further, the investments were always at risk and never "safe" or "FDIC insured."

d. During the course of the scheme, defendant BARBER, Zimmerle, and the Marketers solicited or caused to be transferred to BNZ Capital approximately $13,800,000 from victim investors.

C. THE USE OF INTERSTATE WIRES

4. On or about the dates set forth below, in Orange County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant BARBER and others known and unknown to the Grand Jury, each aiding and abetting each other, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| ONE | 10/10/19 | Wire transfer of $133,000.00 for the benefit of victim B.J. from an account at Fremont Bank to Chase Bank account ending in numbers 7695 in Newport Beach, California |
| TWO | 1/10/20 | Wire transfer of $343,000.00 for the benefit of victim J.J. from an account held at Fidelity Bank to Chase Bank account ending in numbers 7695 in Newport Beach, California |
| THREE | 3/10/20 | Wire transfer of $57,000.00 for the benefit of victim J.I. from an account held at Fidelity Bank to Chase Bank account ending in numbers 7695 in Newport Beach, California |
| FOUR | 7/21/20 | Wire transfer of $248,000.00 for the benefit of victim T.O. from an account held at Fidelity Bank to Chase Bank account ending in numbers 7695 in Newport Beach, California |

COUNTS FIVE AND SIX

[18 U.S.C. § 1957]

On or about the following dates, in Orange County, within the Central District of California, defendant BRETT A. BARBER knowingly engaged in the following monetary transactions of a value greater than $10,000, involving funds he knew to be criminally derived property, which property, in fact, was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, as charged in Counts One through Four of this Indictment, specifically, by causing and sending the following wire transfers:

| **COUNT** | **DATE** | **INTERSTATE WIRE TRANSMISSION** |
|---|---|---|
| FIVE | 3/2/20 | Wire transfer of $50,000.00 from BNZ Capital One, LLC's Chase Bank account ending in numbers 7695 in Newport Beach, California to Guaranteed Income Solutions' Chase Bank account |
| SIX | 5/19/20 | Wire transfer of $1,200,000.00 from BNZ Capital One, LLC's Chase Bank account ending in numbers 7695 in Newport Beach, California to Chartwell Escrow |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant’s conviction of the offenses set forth in any of Counts One through Four of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offenses set forth in any of Counts Five or Six of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

/S/

Foreperson

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

BRADLEY E. MARRETT
Assistant United States Attorney
Deputy Chief,
Santa Ana Branch Office