E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BRADLEY E. MARRETT (Cal. Bar No. 288079)
Assistant United States Attorney
Santa Ana Branch Office
    8000 United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3505
    Facsimile: (714) 338-3561
    E-mail:    bradley.marrett@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 21-196-ODW |
|       Plaintiff, | PLEA AGREEMENT FOR DEFENDANT BRETT R. BARBER |
|         v. | |
| BRETT R. BARBER, | |
|       Defendant. | |

    1.    This constitutes the plea agreement between BRETT R. BARBER ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.    Defendant agrees to:

        a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts 2, 5, and 12

of the First Superseding Indictment, which charge defendant with Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts 2 and 5) and Criminal Contempt, in violation of 18 U.S.C. § 401(3) (Count 12).

   b. Not contest facts agreed to in this agreement.

   c. Abide by all agreements regarding sentencing contained in this agreement.

   d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

   e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

   f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

   g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

   h. Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

   i. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following (collectively, the Forfeitable Assets"):

i.   Approximately $5,731.67 in bank funds seized on or about August 4, 2021, from a Chase Bank account ending in 7695, in the name of BNZ One Capital LLC.

ii.  Approximately $309,069.96 in bank funds seized on or about August 4, 2021, from a Chase Bank account ending in 2566, in the name of BNZ One Capital LLC.

iii. Approximately $304.84 in bank funds seized on or about August 4, 2021, from a Chase Bank account ending in 6318, in the name of BNZ One Capital LLC.

1                iv.  Approximately $250.00 in bank funds seized on or

2 about August 4, 2021, from a Chase Bank account ending in 6359, in

3 the name of BNZ One Capital LLC.

4                v.  Approximately $2,190,317.21 in bank funds seized

5 on or about January 6, 2022, from a Chase Bank account ending in

6 7226, in the name of National American Capital.

7                vi.  The property and any proceeds from the sale of

8 the property commonly known as 506 3rd Street, Galt, California

9 95632-1817, with APN 150-0244-003-0000, titled in the names of C&G

10 LLC and BNZ One Capital LLC.

11                vii. The property commonly known as 2709 Starbird

12 Drive, Costa Mesa, California 92626-4800, with APN 420-021-04, titled

13 in the names of Brett Barber, Melony Barber, and The Barber Family

14 Trust.

15                viii.  The property commonly known as Lot 17,

16 Midway Avenue, Galt, California 95632, with APN 148-0064-004-0000,

17 titled in the names of Ernest Leroy Long and BNZ One Capital LLC.

18                ix.  The property and any proceeds from the sale of

19 the property commonly known as Lot 2, Palmdale Boulevard Vic 42nd

20 South, Palmdale, California 93552, with APN 3023-003-038, titled in

21 the names of C&G LLC and BNZ One Capital LLC.

22                x.  The property commonly known as Lot 15, Spring

23 Street, Galt, California 95632, with APN 148-0064-002-0000, titled in

24 the name of BNZ One Capital LLC.

25                xi.  The property commonly known as Lot 16, Spring

26 Street, Galt, California 95632, with APN 148-0064-003-0000, titled in

27 the name of BNZ One Capital LLC.

28

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.    Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.    To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i. That forfeiture of the Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

4. With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus, or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

<u>THE USAO'S OBLIGATIONS</u>

5. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

      d.   At the time of sentencing, move to dismiss the remaining counts of the First Superseding Indictment and underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

      e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 30 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

<u>NATURE OF THE OFFENSE</u>

6.   Defendant understands that for defendant to be guilty of the crimes charged in Counts 2 and 5 of the First Superseding Indictment, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or

facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

7.   Defendant understands that for defendant to be guilty of the crime charged in Count 12 of the First Superseding Indictment, that is, Criminal Contempt, in violation of Title 18, United States Code, Section 401(3), the following must be true: (1) there was a clear and definite order of the Court to self-surrender; (2) defendant was aware of the order; and (3) defendant willfully disobeyed the order.

<u>PENALTIES AND RESTITUTION</u>

8.   Defendant understands that the statutory maximum sentence that the Court can impose for each violation of Title 18, United States Code, Section 1343, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 401(3), is: life imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: life imprisonment; a 3-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $300.

11.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charge not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with that charge.  The parties currently believe that the applicable amount of restitution is at least approximately $14,000,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

12.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised

release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.   Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

14.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.   Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.   Defendant further understands that removal and

immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning in or about May 2019 and continuing to at least October 2021, in Newport Beach, California, within the Central District of California, defendant BRETT BARBER participated in two schemes to defraud victims of their money and property.

<u>The BNZ Capital One, LLC Scheme</u>

The first scheme was carried out through a company known as BNZ CAPITAL ONE, LLC ("BNZ CAPITAL").  In the course of the scheme, BNZ CAPITAL raised approximately $13.8 million from investors.  For his part, defendant BARBER directly or indirectly raised money from investors B.J., J.J., J.I., and T.O., among others.  Defendant BARBER admits that as a result he caused a loss of at least $3.5 million.

In general, the scheme operated as follows.  BARBER, co-schemer Louis Zimmerle, and others acting at BARBER's direction (the "Marketers"), represented to potential investors that BNZ CAPITAL was in the business of buying real estate and would generate returns to investors by flipping properties (i.e., purchasing real estate at below market value, improving the real estate, and selling it for a profit) or developing properties (i.e., purchasing unimproved real estate, developing it, and selling developed parcels for a profit). Each potential investor was provided a "Lender/Investor's Statement Agreement," which represented, among other things, that BNZ CAPITAL would pay interest to investors, ranging from 8% for some investors to 10% for others.

While BNZ CAPITAL did use some investor money for purchasing real estate, BNZ CAPITAL never generated revenues or profits sufficient to make payments promised to investors, a fact which BARBER knew; that is, BARBER knew that BNZ CAPITAL was repaying earlier investors with money solicited from new investors, and not from business revenues or profits.  Yet, BARBER, Zimmerle, and the Marketers continued to solicit new investors to invest in BNZ CAPITAL, and convinced prior investors to "reinvest" their money in BNZ CAPITAL.  At no time did BARBER, Zimmerle, or the Marketers tell earlier or newer investors that their investments would be used to repay other investors.  BARBER, Zimmerle, and the Marketers also did not disclose to victims that their money would be used for other purposes, such as paying commissions and other monies to BARBER, Zimmerle, and the Marketers, purchasing a personal residence for BARBER, and purchasing a personal residence for Zimmerle.  The false and misleading statements to victims about how their money would be

used were material; none of the victims would have parted with their money or property had they known that they were going to be repaid with new investor money, rather than business-generated revenues; that BARBER and Zimmerle would be using a substantial portion of investor money to pay themselves; or that BARBER and Zimmerle would be using investor money to purchase personal residences.

In carrying out this scheme, defendant BARBER admits that he acted with the intent to defraud; that is, the intent to deceive and cheat the victim investors. Defendant BARBER further admits that at least five investors were elderly, vulnerable victims who suffered a substantial hardship as a result of their investment in BNZ CAPITAL.

Defendant BARBER further admits that in executing the scheme he used or caused to be used interstate wires to carry out the transfer of the following funds on or about January 10, 2020: $343,000 from victim J.J. from an account held at Fidelity Bank. Defendant BARBER further admits that he received and kept approximately $2,933,970.44 of investor money for his personal gain.

The National American Capital Scheme

After BARBER learned of the Federal Bureau of Investigation and Security and Exchange Commission investigations into BNZ CAPITAL, BARBER began a second scheme to defraud, this time involving a company he formed in or about January 2021 called National American Capital ("NAC"). The NAC scheme operated, in substance, in the same way as the BNZ CAPITAL scheme; that is, BARBER and Marketers working at BARBER's direction falsely represented to investors that their investments would be used to fund real estate development projects when, as BARBER knew, there were no real estate development projects and, in fact, the only way NAC could repay earlier investors was by

1   soliciting money from new investors.  Defendant BARBER admits that as
2   a result he caused a loss of at least $3.5 million.
3        Specifically, for example, in or about October 2021, BARBER met
4   with a person he believed to be a prospective investor, but who was,
5   in fact, an FBI agent working in an undercover capacity (the "UC").
6   During a meeting with the UC, BARBER made the following false
7   statements among others: that NAC had been in business for twenty
8   years (when, in fact, as BARBER knew, NAC had only been formed in
9   January 2021); that NAC owned ten parcels of land in Laguna Beach
10  (when, in fact, as BARBER knew, NAC did not own any real estate,
11  including any parcels in Laguna Beach); and that NAC bought a
12  property at 701 East Balboa in Newport Beach and developed it into a
13  four-plex (when, in fact, as BARBER knew, NAC had not).
14       BARBER admits that he made these statements to the UC and
15  similar false statements to other NAC investors and potential
16  investors, including R.V., with the intent to defraud; that is, the
17  intent to deceive and cheat the investors out of their money and
18  property.  BARBER further admits that at the time he made these false
19  statements he knew they were false.  BARBER further admits that in
20  executing the scheme he used or caused to be used interstate wires to
21  carry out the transfer of the following funds on or about April 20,
22  2021: $500,000 from an account at Chase Bank belonging to R.V.
23  Defendant BARBER further admits that he received and kept at least
24  approximately $388,669.37 of investor money for his personal gain.
25       Additional Material Omissions – BNZ CAPITAL Scheme and NAC
26       Scheme
27       Defendant BARBER further admits that in connection with both the
28  BNZ CAPITAL scheme and NAC scheme, BARBER was not licensed or

certified as a financial advisor or investment advisor.  BARBER
further admits that, in fact, he had been barred by the Financial
Industry Regulatory Authority ("FINRA") from acting as or associating
with a broker-dealer.  BARBER admits that he did not disclose to
investors that he had been barred by FINRA and that the failure to
disclose this information to investors was material; that is,
investors would not have invested with BARBER, BNZ CAPITAL, or NAC
had they known the true facts.

Criminal Contempt

After BARBER was indicted in October 2021, BARBER was released
on bond.  By an order by the Honorable Otis D. Wright, United States
District Court Judge, dated January 11, 2023, following a hearing at
which BARBER was present, BARBER's bond was revoked and BARBER was
ordered detained pending trial.  The Court's order required BARBER to
self-surrender to the United States Marshals Service in Los Angeles,
California on or before January 13, 2023.  On or before January 13,
2023, BARBER willfully disobeyed the Court's order and failed to
self-surrender.  Instead, BARBER fled the Central District of
California.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

17. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. §§ 2B1.1(a)(2) |
| $3.5M < Loss < $9.5M | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| Substantial Hardship | +4 | U.S.S.G. § 2B1.1(b)(2)(B) |
| Vulnerable Victim | +2 | U.S.S.G. § 3A1.1(b)(1) |
| Obstruction of Justice | +2 | U.S.S.G. § 3C1.1 |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate, including the specific offense characteristics in U.S.S.G. § 2B1.1(b)(9)(C), U.S.S.G. § 2B1.1(b)(20)(A)(iii), U.S.S.G. § 2S1.1(b)(2)(A), and the adjustment in U.S.S.G. § 4C1.1 (anticipated to become effective November 1, 2023).

18. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20. Defendant understands that by pleading guilty, defendant gives up the following rights:

16

1            a.   The right to persist in a plea of not guilty.

2            b.   The right to a speedy and public trial by jury.

3            c.   The right to be represented by counsel – and if

4 necessary have the Court appoint counsel - at trial.  Defendant

5 understands, however, that, defendant retains the right to be

6 represented by counsel – and if necessary have the Court appoint

7 counsel – at every other stage of the proceeding.

8            d.   The right to be presumed innocent and to have the

9 burden of proof placed on the government to prove defendant guilty

10 beyond a reasonable doubt.

11           e.   The right to confront and cross-examine witnesses

12 against defendant.

13           f.   The right to testify and to present evidence in

14 opposition to the charges, including the right to compel the

15 attendance of witnesses to testify.

16           g.   The right not to be compelled to testify, and, if

17 defendant chose not to testify or present evidence, to have that

18 choice not be used against defendant.

19           h.   Any and all rights to pursue any affirmative defenses,

20 Fourth Amendment or Fifth Amendment claims, and other pretrial

21 motions that have been filed or could be filed.

22                  <u>WAIVER OF APPEAL OF CONVICTION</u>

23    21. Defendant understands that, with the exception of an appeal

24 based on a claim that defendant's guilty plea was involuntary, by

25 pleading guilty defendant is waiving and giving up any right to

26 appeal defendant's convictions on the offenses to which defendant is

27 pleading guilty.  Defendant understands that this waiver includes,

28 but is not limited to, arguments that the statute to which defendant

is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

22. Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 30 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $14,000,000; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 30 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the

USAO reserves the right to appeal the following: the amount of restitution ordered if that amount is less than $14,000,000.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

24.  Defendant agrees that if, after entering guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

25.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

26.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO

may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.   The USAO will be relieved of all its obligations under this agreement.

27.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action

20

against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

28.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

31. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///
///
///
///
///
///
///
///

1        PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        32.   The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   E. MARTIN ESTRADA
    United States Attorney

9

10  _____        October 23, 2023
                                             _____
11  BRADLEY E. MARRETT                       Date
    Assistant United States Attorney
                                                  10-23.23
12  _____
                                             _____
13  BRETT BARBER                             Date
    Defendant
                                                  10/23/23
14  _____        _____
                                             Date
15  ROBERT M. BERNSTEIN
    Attorney for Defendant
16  BRETT BARBER

17

18

19

20

21

22

23

24

25

26

27

28

                            23

1  ### CERTIFICATION OF DEFENDANT

2     I have read this agreement in its entirety.  I have had enough
3  time to review and consider this agreement, and I have carefully and
4  thoroughly discussed every part of it with my attorney.  I understand
5  the terms of this agreement, and I voluntarily agree to those terms.
6  I have discussed the evidence with my attorney, and my attorney has
7  advised me of my rights, of possible pretrial motions that might be
8  filed, of possible defenses that might be asserted either prior to or
9  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
10 of relevant Sentencing Guidelines provisions, and of the consequences
11 of entering into this agreement.  No promises, inducements, or
12 representations of any kind have been made to me other than those
13 contained in this agreement.  No one has threatened or forced me in
14 any way to enter into this agreement.  I am satisfied with the
15 representation of my attorney in this matter, and I am pleading
16 guilty because I am guilty of the charges and wish to take advantage
17 of the promises set forth in this agreement, and not for any other
18 reason.

19

20 BRETT BARBER
   Defendant

                                                    10.23.23
                                                    Date

21

22

23

24

25

26

27

28

24

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am BRETT BARBER's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

ROBERT M. BERNSTEIN
Attorney for Defendant
BRETT BARBER

10/23/23
Date